UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERRY D. VANWAGONER,<br><br>Plaintiff,<br><br>v.<br><br>SIEMENS INDUSTRY, INC.,<br><br>Defendant. | No. 2:13-cv-01303-KJM-EFB<br><br><br><br>ORDER |

This matter is before the court on the motion of Jerry D. Vanwagoner ("plaintiff" or "class representative") for an order preliminarily approving a class settlement and conditionally certifying the settlement class. (ECF 22.) The court held a hearing on the matter on April 11, 2014, at which Michael Carver appeared for plaintiff and Gregory Iskander appeared for defendant. As explained below, the court GRANTS plaintiff's motion.

I.   FACTUAL AND PROCEDURAL BACKGROUND

This class action lawsuit arises out of defendant's alleged "failure to properly pay wages, overtime and commissions, failure to reimburse workers for all work-related expenses, [and] failure to provide lawful meal and rest periods . . . ." (ECF 13 ¶ 1.) In addition to the class-wide claims, plaintiff also brings individual claims for retaliation and wrongful termination in violation of public policy. (*Id.*)

/////

1

1          Plaintiff began working as a security technician, "installing and maintaining
2  security systems . . . [and also handling] . . . fire alarm systems" for Siemens Building
3  Technologies Division ("BT") in 2010.  BT is a division of defendant Siemens Industry, Inc.
4  (Vanwagoner Decl., ECF 23-1 ¶¶ 1–2.)  Plaintiff left his employment involuntarily in February
5  2013.  (ECF 23 at 1.)

6          Plaintiff filed a class action complaint in Yolo County Superior Court in 2013,
7  alleging various labor and wage law violations under California law on behalf of himself and the
8  class, and individual claims for retaliation and wrongful termination in violation of public policy.
9  (*See generally* ECF 23 at 1–3.)  Defendant removed the case to this court, arguing diversity of
10 citizenship jurisdiction under 28 U.S.C. § 1332(a).  (ECF 2.)  Defendant denies plaintiff's
11 allegations.  (ECF 23 at 4.)  After removal, the parties learned "of a potentially related case
12 pending in the Northern District of California" entitled *Albert Ching v. Siemens Industry, Inc.*,
13 No. 11-4838, 2013 WL 6200190 (N.D. Cal. Nov. 27, 2013).  (ECF 23 at 3.)  There, because a
14 settlement was reached "on behalf of 115 Fire Service Technicians," the potential class members
15 were narrowed in this action to security technicians only.  (*Id.* at 4.)

16         After determining the potential class size to be 51 employees, the parties agreed to
17 engage in mediation and selected as a mediator Michael Dickstein, who has significant
18 experience in wage and hour class actions.  (Carver Decl. ¶ 6.)  As a result of the mediation, the
19 parties settled plaintiff's individual claims for $30,000.[1]  As to the class-wide claims, the parties
20 reached a settlement agreement in the amount of $225,000 ("maximum settlement amount").  (*Id.*
21 ¶ 17.)  The agreement defines the class as:

> All persons employed by [d]efendant in the State of California from
> May 2, 2009 through November 30, 2013, as a security technician
> however titled, including but not limited to the positions of Field
> Technician I, Field Technician II, Senior Field Technician, Field
> Service Technician I, Field Service Technician II, Senior Field
> Service Technician, Senior Technician Security Services and
> Security Service Technician.

---

[1] This agreement is not part of the class-wide settlement agreement and is not before the court.  (*Id.*)

2

(ECF 25 ¶ 1.8.)

Under the terms of the settlement agreement, the maximum settlement amount is to be distributed as follows:

 (1) Attorney's fees of not more than $56,250 to be paid to class counsel;

 (2) Litigation costs up to the amount of $8,000 to be paid to class counsel;

 (3) Settlement administration costs up to approximately $10,000 to be paid to the third party administrator;

 (4) Class representative fee of $5,000 to be paid to plaintiff in addition to plaintiff's entitlement as a class member;

 (5) Payment under California's Labor Code, Private Attorneys General Act of 2004 ("PAGA"), CAL. LAB. CODE §§ 2698–2699, in the amount of $3,000. Out of this amount, $2,250 (75%) will be paid to the Labor and Workforce Development Agency and $750 will be paid to the class members; and

 (6) The remaining funds ("net settlement amount") in the amount "of approximately $145,000" shall be available to the class members submitting claims. (ECF 23 at 9.)

The settlement "includes a minimum payout to be distributed to [c]lass [m]embers who submitted Claim Forms of 60 percent of the Net Settlement Amount." (ECF 25 ¶ 6.1.) If "the amounts claimed [do] not rise to the level of 60 percent of the Net Settlement Amount, then each claimant's claim amount shall be increased, pro rata, such that a total of 60 percent of the Net Settlement Amount shall be distributed." (*Id.*)

Plaintiff's counsel declares that the settlement resulted from the parties' arms-length negotiations and the amount "is in the best interest of the class." (*Id.*) Further, plaintiff's counsel declares: "I have sufficient class action, litigation and employment law experience to properly evaluate the merits of this settlement. I believe the settlement is fair and reasonable in light of the risks . . . ." (ECF 24 ¶ 18.)

Plaintiff now moves this court seeking an order (1) approving the class settlement agreement; (2) conditionally certifying the class and appointing plaintiff as the class

3

representative with plaintiff's counsel as class counsel; (3) approving the form and method of service; (4) approving the procedure for class members to submit claims, opt-out or object; and (5) setting a hearing date on a final settlement approval. (ECF 22 at 2.) Plaintiff's motion is unopposed. (*Id.*)

## II.    STANDARDS AND PROCESS FOR CLASS SETTLEMENT APPROVAL

"Courts have long recognized that settlement class actions present unique due process concerns for absent class members." *In re Bluetooth Headset Prods. Liab. Litig.* (*Bluetooth*), 654 F.3d 935, 946 (9th Cir. 2011) (internal quotation marks omitted). To protect absent class members' due process rights, Rule 23(e) of the Federal Rules of Civil Procedure permits a class action to be settled "only with the court's approval" "after a hearing and on a finding" that the agreement is "fair, reasonable, and adequate." Moreover, if "the settlement agreement is negotiated prior to formal class certification," then "there is an even greater potential for a breach of fiduciary duty owed the class." *Radcliffe v. Experian Info. Solutions Inc.*, 715 F.3d 1157, 1168 (9th Cir. 2013) (internal alteration and quotation marks omitted) (quoting *Bluetooth*, 654 F.3d at 946). "Accordingly, such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *Bluetooth*, 654 F.3d at 946. "Judicial review must be exacting and thorough." MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.61 (2004).

"Review of a proposed class action settlement usually involves two hearings." *Id.* § 21.632. First, the parties submit the proposed terms of the settlement so that the court can make "a preliminary fairness evaluation," and if the parties move "for both class certification and settlement approval, the certification hearing and preliminary fairness evaluation can usually be combined." *Id.* Then, "[t]he judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and the date of the final fairness hearing." *Id.* After the initial certification and notice to the class, the court then conducts a second fairness hearing before finally approving any proposed settlement. *Narouz v. Charter Commc'ns, Inc.*, 591 F.3d 1261, 1266–67 (9th Cir. 2010).

Regarding class certification, the parties' stipulation that the class should be certified is not sufficient; instead the court "must pay undiluted, even heightened attention to class certification requirements." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (internal quotations marks omitted). *But see* 4 ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS § 11:28 (4th ed. 2002) ("Since *Amchem*, approval of settlement classes is generally routine and courts are fairly forgiving of problems that might hinder class certification were the case not to be settled." (collecting cases)). Regarding notice to the class, the court must ensure that the class members "receive 'the best notice that is practicable under the circumstances.'" *Wal-Mart Stores, Inc. v. Dukes*, __ U.S. __, 131 S. Ct. 2541, 2558 (2011) (quoting FED. R. CIV. P. 23(c)(2)(B)).

III.   DISCUSSION

   A.   <u>Class Certification</u>

A party seeking to certify a class must demonstrate that it has met the requirements of Rule 23(a) and at least one of the requirements of Rule 23(b). *Amchem*, 521 U.S. at 614; *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979–80 (9th Cir. 2011). Although the parties in this case have stipulated that a class exists for purposes of settlement, the court must nevertheless undertake the Rule 23 inquiry independently, both at this stage and at the later fairness hearing. *West v. Circle K Stores*, No. 2:04-cv-0438 WBS GGH, 2006 WL 1652598, at *2 (E.D. Cal. June 12, 2006).

Under Rule 23(a), before certifying a class, this court must be satisfied that:

> (1) the class is so numerous that joinder of all members is impracticable (the "numerosity" requirement);
>
> (2) there are questions of law or fact common to the class (the "commonality" requirement);
>
> (3) the claims or defenses of representative parties are typical of the claims or defenses of the class (the "typicality" requirement); and
>
> (4) the representative parties will fairly and adequately protect the interests of the class (the "adequacy of representation" inquiry).

*Collins v. Cargill Meat Solutions Corp.*, 274 F.R.D. 294, 300 (E.D. Cal. 2011) (quoting *In re Intel Sec. Litig.*, 89 F.R.D. 104, 112 (N.D. Cal. 1981)); *accord* FED. R. CIV. P. 23(a).

5

The court must also determine whether the proposed class satisfies Rule 23(b)(3), on which plaintiffs rely in this case. To meet the requirements of this subdivision of the rule, the court must find that "'questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and effectively adjudicating the controversy.'" *Dukes*, 131 S. Ct. at 2558 (quoting FED. R. CIV. P. 23(b)(3)). "The matters pertinent to these findings include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; [and] (B) the extent and nature of any litigation concerning the controversy already begun by or against class members . . . ." FED. R. CIV. P. 23(b)(3)(A)–(B).

1. Numerosity

Although there is no absolute numerical threshold for numerosity, courts have approved classes consisting of 39, 64, and 71 plaintiffs. *Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 474 (E.D. Cal. 2010) (citing *Jordan v. L.A. Cnty.*, 669 F.2d 1311, 1319 (9th Cir. 1982), *vacated on other grounds*, 459 U.S. 810). Here, the parties agree the class includes 51 employees. (ECF 23 at 4.) Accordingly, the numerosity requirement has been met.

2. Commonality

To satisfy the commonality requirement, plaintiffs must do more than show "that they have all suffered a violation of the same provision of law." *Dukes*, 131 S. Ct. at 2551. The claims must depend upon a common contention that "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of those claims in one stroke." *Id.* It is not so much that the class raises common questions: what is necessary is "the capacity of a classwide proceeding to generate common answers . . . ." *Id.* "[T]he merits of the class members' substantive claims are often highly relevant when determining whether to certify a class." *Ellis*, 657 F.3d at 981.

Here, given the nature of the class claims and definition of the class, it appears the commonality requirement has been satisfied. Not only does the class raise common questions, but the class action may generate a class-wide answer to the central issues: whether defendant's calculation and payment of wages and overtime were correct and whether defendant engaged in a

6

1  uniform practice of denying meal and rest periods and denying reimbursements. *See Ching,* 2013
2  WL 6200190, at *4 (finding commonality requirement satisfied where "issues facing the class
3  ar[o]se from common questions involving [the] [d]efendant's calculation and payment of wages
4  and overtime"); *Dilts v. Penske Logistics, LLC*, 267 F.R.D. 625, 633 (S.D. Cal. 2010) (finding the
5  commonality requirement satisfied where the plaintiffs identified "common factual questions,
6  such as whether [the] [d]efendants' policies deprived the . . . class members of meal periods, rest
7  periods, overtime pay, and reimbursement . . . and common legal questions, such as [the]
8  [d]efendants' obligations under [various sections of the] California Labor Code and California's
9  Unfair Competition law").

   3. Typicality

11  "'[T]he commonality and typicality requirements of Rule 23(a) tend to merge'"
12  because both act "'as guideposts for determining whether maintenance of a class action is
13  economical and whether the named plaintiff's claim and the class claims are so interrelated that
14  the interests of the class members will be fairly and adequately represented in their absence.'"
15  *Dukes*, 131 S. Ct. at 2551 n.5 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157–58 n.13
16  (1982)). A court resolves the typicality inquiry by considering "whether other members have the
17  same or similar injury, whether the action is based on conduct which is not unique to the named
18  plaintiffs, and whether other class members have been injured by the same course of conduct."
19  *Ellis*, 657 F.3d at 984 (citation and internal quotation marks omitted); *Morales v. Stevco, Inc.*,
20  No. 1:09-cv-00704 AWI-JLT, 2011 WL 5511767, at *6 (E.D. Cal. Nov. 10, 2011). In this case, it
21  appears the class members suffered similar injuries when defendant allegedly failed "to properly
22  pay wages, overtime and commissions, [failed] to reimburse workers for all work-related
23  expenses, [and] [failed] to provide lawful meal and rest periods . . . ." (ECF 13 ¶ 1.) This
24  satisfies the typicality inquiry. *See Murillo*, 266 F.R.D. at 475.

   4. Adequacy of Representation

26  To determine whether the named plaintiffs will protect the interests of the class,
27  the court must explore two factors: (1) whether the named plaintiff and counsel have any conflicts
28  of interest with the class as a whole, and (2) whether the named plaintiff and counsel vigorously

7

pursued the action on behalf of the class. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998); *see also Clersceri v. Beach City Investigation Servs., Inc.*, No. 10-cv-3873 JST (RZx), 2011 WL 320998, at *6 (C.D. Cal. Jan. 27, 2011) ("(1) the class representative must not have interests antagonistic to the unnamed class members, and (2) the representative must be able to prosecute the action 'vigorously through qualified counsel.'" (citation omitted)).

Nothing in the papers presently before the court suggests the representative plaintiff has any conflicts of interest with the other class members. Though plaintiff has also settled his individual claims, his class-wide claims appear to be "completely aligned with [that] of the class." *Collins*, 274 F.R.D. at 301. Hence, there appears to be no conflict at this stage.

"Although there are no fixed standards by which 'vigor' can be assayed, considerations include competency of counsel and, in the context of a settlement-only class, an assessment of the rationale for not pursuing further litigation." *Hanlon*, 150 F.3d at 1021. In addition, a named plaintiff will be deemed to be adequate "as long as the plaintiff has some basic knowledge of the lawsuit and is capable of making intelligent decisions based upon [the plaintiff's] lawyers' advice . . . ." *Kaplan v. Pomerantz*, 131 F.R.D. 118, 121–22 (N.D. Ill. 1990).

Plaintiff's counsel has described his experience in class-action cases and specifically, in class-action cases involving employment related matters. (*See* Carver Decl. ¶¶ 18, 21, ECF 24.) Specifically, plaintiff's counsel "has been practicing law since 1994, primarily in labor and employment law[,] [and has] represented over 1,000 individual employees and employers in employment law related matters." (*Id.* ¶ 18.) He also declares he has "litigated to conclusion and currently represent[s] parties in over two hundred cases filed in state and federal courts . . .[,] [and] . . . [has] been a plaintiffs' attorney in over one hundred cases filed as class actions which involved non-payment of overtime, wages, or meal and rest period violations." (*Id.*) Counsel also has explained that the parties agreed to settlement after "arm's-length negotiations through an experienced mediator and only after [they] conducted a reasonable investigation into the facts, considering the stage at which the parties mediated." (*Id.*)

At this preliminary stage of the settlement-approval process, the court finds the class representative and counsel to be adequate. *See Falcon*, 457 U.S. at 160 (observing that

8

1  finding of adequacy "particularly during the period before any notice is sent to members of the
2  class 'is inherently tentative'").

3      5.  Predominance

4      "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are
5  sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623.
6  Although it is similar to Rule 23(a)'s commonality requirement, it is more demanding. *Id.* at 624.
7  To determine whether common questions predominate, the court must consider "the relationship
8  between the common and individual issues" by looking at the questions that preexist any
9  settlement. *Hanlon*, 150 F.3d at 1022. In addition, the predominance inquiry focuses on the
10 "notion that adjudication of common issues will help achieve judicial economy." *In re Wells*
11 *Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 958 (9th Cir. 2009) (citation and internal
12 quotation marks omitted).

13     As noted above, with the major issues in this case stemming from defendant's
14 alleged uniform failure to properly calculate wages and overtime; failure to account for meal
15 periods and rest periods; failure to provide reimbursements; and little suggestion there will be
16 individual issues apart from calculating individual damages, the class action will promote
17 efficiency by allowing a number of claims to be litigated simultaneously. At this stage, the
18 predominance requirement has been met.

19     6.  Superiority

20     In resolving the Rule 23(b)(3) superiority inquiry, the court should consider class
21 members' interests in pursuing separate actions individually, any litigation already in progress
22 involving the same controversy, the desirability of concentrating the litigation in one forum, and
23 potential difficulties in managing the class action, although the last two considerations are not
24 relevant in the settlement context. *Schiller v. David's Bridal, Inc.*, No. 1:10-cv-0616 AWI-SKO,
25 2012 WL 2117001, at *10 (E.D. Cal. June 11, 2012) ("In the context of settlement, however, the
26 third and fourth factors are rendered moot and are not relevant . . . because the point is that there
27 will be no trial . . . ." (citing *Amchem*, 521 U.S. at 620)).

28 /////

9

Here, if class members were to sue individually, each would bring essentially the same claims for relatively small sums and yet might have to expend substantial resources to cover litigation costs.  Thus, a class action is superior to individual resolution of the claims.

In sum, because the court finds the requirements of Rule 23(a) and Rule 23(b)(3) are met, conditional certification of the class is appropriate.  Accordingly, for settlement purposes only, the court certifies the following class:

> All persons employed by [d]efendant in the State of California from May 2, 2009 through November 30, 2013, as a security technician however titled, including but not limited to the positions of Field Technician I, Field Technician II, Senior Field Technician, Field Service Technician I, Field Service Technician II, Senior Field Service Technician, Senior Technician Security Services and Security Service Technician.

(ECF 25 ¶ 1.8.)

### B.  Preliminary Fairness Determination

#### 1.  Proposed Settlement Agreement

"At this preliminary approval stage, the court need only 'determine whether the proposed settlement is within the range of possible approval,'" *Murillo*, 266 F.R.D. at 479 (quoting *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982)), such that there is a "reason to notify the class members of the proposed settlement and to proceed with a fairness hearing," *Gautreaux*, 690 F.2d at 621 n.3.  The court considers:

- the strength of plaintiff's case;
- the risk, expense, complexity, and likely duration of further litigation;
- the risk of maintaining class action status throughout the trial;
- the amount offered in settlement;
- the extent of discovery completed and the stage of the proceedings;
- the experience and views of counsel;
- the presence of a governmental participant; and
- the reaction of the class members to the proposed settlement.

/////

*Hanlon*, 150 F.3d at 1026.  This "initial evaluation can be made on the basis of information [contained in] briefs, motions, or informal presentations by parties," MANUAL FOR COMPLEX LITIGATION, *supra*, § 21.632, and "the Court need not review the settlement in detail at this time," *Durham v. Cont'l Cent. Credit, Inc.*, No. 07-cv-1763 BTM-WMC, 2011 WL 90253, at *2 (S.D. Cal. Jan. 10, 2011) (citing NEWBERG, *supra*, § 11.25).  Instead, "[g]reat weight is accorded the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *Gribble v. Cool Transports, Inc.*, No. CV-06-04863, 2008 WL 5281665, at *9 (C.D. Cal. 2008) (citation and internal quotation marks omitted).  However, the court must also consider whether the settlement is the result of collusion.  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1290, 1291 (9th Cir. 1992).  Where "settlements are negotiated at arm's length," "a presumption of fairness applies . . . ." *Gribble*, 2008 WL 5281665, at *9.

The court has reviewed the proposed settlement's terms and moving papers and, considering them together with counsels' representations at the hearing, the court finds that the settlement terms are at this time "within the range of possible approval." *Murillo*, 266 F.R.D. at 479.  The instant settlement agreement, quoted at length, includes the following material terms:

> **6.1**   The Maximum Settlement Amount shall not exceed Two Hundred and Twenty Five Thousand Dollars ($225,000.00).  The Maximum Settlement Amount shall be "all-inclusive," meaning that all Claims Administration Costs, the Class Representative Service Fee, all of Class Counsel's attorneys' fees and costs, the PAGA Penalty Payment, and all possible claim amounts to eligible Class Members, including any employer payroll taxes, shall be distributed from the Maximum Settlement Amount.  This settlement includes a minimum payout to be distributed to Class Members who submitted Claim Forms of 60 percent of the Net Settlement Amount.  Should the amounts claimed not rise to the level of 60 percent of the Net Settlement Amount, then each claimant's claim amount shall be increased, pro rata, such that 60 percent of the Net Settlement Amount shall be distributed.
>
> **6.2**   The Maximum Settlement Amount shall be distributed as follows: In connection with the Final Approval Hearing, Class Counsel will submit an application for an award of attorneys' fees of no more than $56,000 (25% of the Maximum Settlement Amount) and an award of actual litigation costs incurred by Class

11

>Counsel and Plaintiff of up to $8,000, with the understanding that the Court may award lesser amounts of fees and costs as are determined to be fair and reasonable by the Court . . . .
>
>**6.3**    All Claims Administration Costs awarded by the Court shall be paid from the Maximum Settlement Amount.  The parties estimate the Claims Administration Costs to be approximately Ten Thousand Dollars ($10,000.00); Class Counsel shall seek approval for a Class Representative Service Fee of Five Thousand Dollars ($5,000.00) to Plaintiff, or such lesser amount as may be approved by the Court.  The Class Representative Service Fee paid from the Maximum Settlement Amount shall be a payment separate and apart from any Claim Amount that Plaintiff may be entitled to receive as a Class Member . . . .
>
>**6.5**    The Claims Administrator will divide the Net Settlement Amount by the total number of Compensable Work Weeks worked by all Class Members during the Class Period.  This will yield the initial dollar value per Compensable Work Week.  A Class Member's initial individual Claim Amount will be determined by multiplying the dollar value per Compensable Work Week . . . by the total number of Compensable Work Weeks worked by all Class Members.
>
>     **(1)** All disputes regarding the number of Compensable Work Weeks worked by a Class Member or the calculation of a Class Member's Claim Amount will be resolved and decided by the Claims Administrator and the Claims Administrator's decision on all such disputes will be final and not subject to appeal.

(ECF 25.)

As explained above, the parties participated in a full-day mediation overseen by experienced mediator Michael E. Dickstein, resulting in a memorandum of understanding signed by the parties on November 12, 2013.  (*Id.* ¶ 2.7.)  The parties represent they reached the settlement agreement "after having conducted significant investigation, analysis and discovery." (*Id.* ¶ 2.8.)  Additionally, "prior to the mediation, and in connection with the [p]arties' formal and informal discovery and settlement negotiations, [d]efendant provided [p]laintiff with data concerning employees' time and payroll records, and other documentary evidence."  (*Id.*) Accordingly, the parties believe their agreement is reasonable and is in the best interests of the class in light of the "sharply disputed factual and legal issues"; "the various risks"; and "the time and expense" that may be required.  (*Id.* ¶ 2.9.)

At this stage of the case and based on the record before the court, there is no indication of collusion between or among the parties; no indication of preferential treatment between plaintiff and class members; and the agreement seems to be within the range of possible approval. *See Ching*, 2013 WL 6200190, at *6 (finding conditional class settlement appropriate under similar circumstances). As "the [c]ourt need not perform a full fairness analysis at this time because it will be done in connection with the [final] fairness hearing," *Nieves v. Cmty. Choice Health Plan of Westchester, Inc.*, No. 08 CV 321 (VB)(PED), 2012 WL 857891, at *5 (S.D.N.Y. Feb. 24, 2012), this is sufficient for preliminary approval.

### 2. Court's Reservations

The court's preliminary approval is not without reservation. The court has several specific concerns that must be addressed before final approval. As a general matter, the court reminds counsel that in circumstances such as this, in which the class representatives and defendants seek approval of a settlement negotiated *before* class certification, judicial scrutiny is particularly exacting. *Bluetooth*, 654 F.3d at 946 ("[W]here, as here, a settlement agreement is negotiated prior to formal class certification . . . , [the] agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair."). That the parties came to terms during a mediation with an experienced mediator, although "a factor weighing in favor of a finding of non-collusiveness," is "not on its own dispositive." *Id.* at 948, 939 (reversing district court's approval of a class settlement even though settlement was reached during a "formal mediation session, overseen by a retired California Court of Appeal Justice."). Moreover, the fact that the settlement agreement contains a "clear sailing" arrangement, in which defendants agree not to contest the class counsels' application for attorneys' fees, "which carries [with it] 'the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class,'" also invites increased judicial scrutiny. *Id.* at 947 (quoting *Lobatz v. U.S. W. Cellular of Cal., Inc.*, 222 F. 3d 1142, 1148 (9th Cir. 2000)).

13

1         As discussed at the preliminary hearing, the parties will need to provide the court
2  additional evidence before the settlement is finally approved.  For example, the parties need to
3  provide a more detailed explanation regarding the minimum payout provision in section 6.1 of the
4  settlement agreement.  While at the hearing, the parties' counsel represented that the unclaimed
5  40 percent will revert to defendant should the amounts claimed not rise to the level of 60 percent,
6  the court needs further explanation as to why reversion of funds to defendant is proper as opposed
7  to some other distribution benefiting the class, and why 60 percent is a reasonable minimum
8  payout percentage under the circumstances of this case.  *See Six (6) Mexican Workers v. Arizona*
9  *Citrus Growers*, 904 F.2d 1301, 1308 (9th Cir. 1990) (reverter provision of unclaimed funds to a
10 defendant may be improper under certain circumstances, with *cy pres* award or escheat to
11 government as options).  In doing so, the parties need to present more than counsel's bare
12 declarations.  *See Bluetooth*, 654 F.3d at 948 ("[T]he district court should have pressed the parties
13 to substantiate their bald assertions with corroborating evidence.").
14        In addition, the following questions should be answered:
15        First, how is the amount requested ($10,000) for the class administrator reasonable
16 in light of the small class size?
17        Second, how does the settlement amount relate to the merits of the class members'
18 individual claims?  The parties should submit mediation statements and explain how the
19 settlement amount was reached.
20        Third, the parties have stated that plaintiff has settled his individual claims as well.
21 Under Rule 23(e), "counsel must submit to the court . . . a statement identifying any agreement
22 made in connection with the" proposed class "settlement[s], including all agreements and
23 undertakings 'that, although seemingly separate, may have influenced the terms of the
24 settlement[s] by trading away possible advantages for the class in return for advantages for others.
25 Doubts should be resolved in favor of identification.'"  MANUAL FOR COMPLEX LITIGATION,
26 *supra*, § 21.631 (quoting FED. R. CIV. P.  23(e)(2) advisory committee note).  The parties should
27 provide a copy of plaintiff's individual agreement.  To the extent a copy of the agreement "might
28 raise confidentiality concerns," the parties may claim any applicable protections and request that

14

the court "receive information about such agreement[] *in camera*." *Id.* The local rules address procedures for seeking *in camera* review.

Fourth, provisions 7.3 and 10.3 of the settlement agreement provisions contemplate that if certain class members do not receive a notice packet because for instance, the notice packets are returned as undeliverable, those members will not receive a payment, and yet they will release their claims. (ECF 25.) This aspect of the settlement agreement may not sufficiently protect absent class members' due process rights. *See Lusby v. Gamestop Inc.*, __ F.R.D. __, 2013 WL 1210283, at *11 (N.D. Cal. Mar. 25, 2013) (finding the "aspect of the Settlement Agreement does not give due process to Class Members who are known not to have received notice of the Settlement Agreement, and yet are bound by its terms"). The parties should be prepared to explain how these provisions comply with the fairness requirement.

Final approval will not issue without resolution of the court's concerns. Because the court finds that the settlement terms are, at this time, "within the range of possible approval," *Murillo*, 266 F.R.D. at 479, the court grants preliminary approval of the proposed settlement.

3. <u>Proposed Class Notification</u>

For any class certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." FED. R. CIV. P. 23(c)(2)(B). Such notice must describe, "in plain, easily understood language:"

- the nature of the action;
- the definition of the class certified;
- the class claims, issues, or defenses;
- that a class member may enter an appearance through an attorney if the member so desires;
- that the court will exclude from the class any member who requests exclusion;
- the time and manner for requesting exclusion; and
- the binding effect of a class judgment on members under Rule 23(c)(3).

*Id.*

15

1    The court has reviewed the "Notice of Pendency of Class Action and Proposed
2 Settlement" (ECF No. 25, Ex. 2.) and finds that it fully conforms with due process and the
3 applicable Rule. *See* FED. R. CIV. P. 23(c)(2)(B).
4    The proposed notice is appropriate because it adequately describes the terms of the
5 settlement with one exception; it should correct the amount to be paid to the class administrator to
6 read "up to $10,000." It also informs the class about the allocation of attorneys' fees, and will
7 provide specific and sufficient information regarding the date, time, and place of the final
8 approval hearing. *See Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1126–27
9 (E.D. Cal. 2009).
10    Additionally, in light of the small class size, 51 members, the mode of delivery of
11 notice is sufficient; at the hearing, the parties represented that the vast majority of the class
12 members still work for defendant. "The parties have agreed to use a neutral third party Claims
13 Administrator, Simpluris, Inc., to administer the [s]ettlement." (ECF 24 ¶ 20.) Paragraph 10.2 of
14 the parties' stipulation provides:

> Within twenty one (21) days after the Date of Preliminary Approval, the Claims Administrator shall mail, via First Class postage-prepaid United States mail, to all Class Members, at their most recent address, the Notice and Claim Form (collectively, the "Notice Packet"). In the event that any Notice Packet is returned as undeliverable, the Claims Administrator will promptly have data searches conducted, including performing a search using the Class Member's Social Security Number to obtain a current valid mailing address for the Class Member. Following each search that results in a corrected address, the Claims Administrator shall promptly re-send the Notice Packet to the Class Member via First Class postage-prepaid United States mail. For Class Members who are re-sent the Notice Packet pursuant to this Section, the Claims Period Deadline shall be extended another fifteen (15) calendar days.

24 (ECF 25.)
25    For the foregoing reasons, and as proposed, the notice and the mode
26 of notice are appropriate.
27    C.    Class Counsel
28    In light of counsel's experience in wage and hour class action litigation, the court

16

appoints Labor Law Office, a professional corporation, as class counsel.

### D. Final Approval Hearing Schedule

The court adopts the following proposed deadlines:

| Date | Event |
| --- | --- |
| 15 Days[2] | Deadline for defendant to produce the list of all potential class members to the claims administrator, along with personal information to the extent reasonably feasible, to facilitate the best practicable notice |
| 21 Days | Deadline for the claims administrator to mail notice packets to class members |
| 45 Days | Deadline for opting out of the settlement class and for objecting to the settlement |
| 82 days | Deadline for class counsel to file and serve motion for final approval of settlement |
| September 12, 2014, at 10:00 a.m. in Courtroom 3 | Final Approval Hearing |

## IV. CONCLUSION

For the foregoing reasons, plaintiff's motion for preliminary approval of class action settlement is GRANTED as follows:

1. Conditional certification of the following class is granted.

    All persons employed by [d]efendant in the State of California from May 2, 2009 through November 30, 2013, as a security technician however titled, including but not limited to the positions of Field Technician I, Field Technician II, Senior Field Technician, Field Service Technician I, Field Service Technician II, Senior Field Service Technician, Senior Technician Security Services and Security Service Technician.

2. Plaintiff Jerry D. Vanwagoner is appointed as class representative for the class.

3. Simpluris, Inc. is appointed as claims administrator.

---

[2] The number of days as used herein refers to the number of days after the date on which this order is filed.

17

4. Labor Law Office is appointed as class counsel.

5. Preliminary approval of the settlement is granted.

6. Approval of the proposed notice is granted with the following modification: any reference to the amount to be paid to the class administrator should be changed to "up to $10,000."

7. The proposed final hearing schedule is adopted as set forth above, with the Final Approval Hearing set for September 12, 2014, at 10:00 a.m.

8. Class counsel and plaintiff shall file a motion for attorney's fees, costs, and class representative payment on or before the date the class administrator mails the class packets to class members.

IT IS SO ORDERED.

DATED: May 13, 2013.

_____
UNITED STATES DISTRICT JUDGE