UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERRY D. VANWAGONER, | No. 2:13-cv-01303-KJM-EFB |
| Plaintiff, | |
| v. | ORDER |
| SIEMENS INDUSTRY, INC., | |
| Defendant. | |

Plaintiff Jerry D. Vanwagoner ("plaintiff" or "class representative") moves without opposition for final approval of class action settlement and for attorney's fees and costs. (ECF Nos. 30, 31.) The court held a hearing on the matter on October 24, 2014, at which Michael Carver appeared for plaintiff and Gregory Iskander appeared for defendant. As explained below, the court GRANTS plaintiff's motions.

I.  FACTUAL AND PROCEDURAL BACKGROUND

This class action lawsuit arises out of defendant's alleged "failure to properly pay wages, overtime and commissions, failure to reimburse workers for all work-related expenses, [and] failure to provide lawful meal and rest periods . . . ." (ECF No. 13 ¶ 1.)

Plaintiff began working as a security technician, "installing and maintaining security systems . . . [and also handling] . . . fire alarm systems" for Siemens Building Technologies Division ("BT") in 2010. (Vanwagoner Decl., ECF No. 23-1 ¶ 2.) BT is a division

1

1  of defendant Siemens Industry, Inc.  (*Id.* ¶ 2.)  Plaintiff left his employment involuntarily in
2  February 2013.  (ECF No. 23 at 1.)

3  Plaintiff filed a class action complaint in Yolo County Superior Court in 2013,
4  alleging various labor and wage law violations under California law on his behalf and that of the
5  putative class, as well as individual claims for retaliation and wrongful termination in violation of
6  public policy.  (*See generally id.* at 1–3.)  Defendant removed the case to this court, asserting
7  subject matter jurisdiction on the basis of diversity of citizenship under 28 U.S.C. § 1332(a).
8  (ECF No. 2.)  Defendant denied plaintiff's allegations.  (ECF No. 23 at 4.)  After the removal, the
9  parties learned "of a potentially related case pending in the Northern District of California,"
10 *Albert Ching v. Siemens Industry, Inc.*, No. 11-4838, 2013 WL 6200190 (N.D. Cal. Nov. 27,
11 2013).  (ECF No. 23 at 3.)  There, because a settlement was reached "on behalf of 115 Fire
12 Service Technicians," the potential class members were reduced in this action to security
13 technicians only.  (*Id.* at 4.)

14 After determining the potential class size in this case was 51 employees, the
15 parties agreed to engage in mediation with mediator Michael Dickstein, who has significant
16 experience in wage and hour class actions.  (Carver Decl. ¶ 6, ECF No. 24.)  As a result of the
17 mediation, the parties settled plaintiff's individual claims for $30,000 in an agreement that is not
18 before the court.  As to the class-wide claims, the parties reached a settlement agreement in the
19 amount of $225,000 ("maximum settlement amount").  (*Id.* ¶ 17.)

20 In March 2014, plaintiff moved for preliminary approval of the class settlement
21 agreement.  (ECF No. 22.)  In granting plaintiff's motion, the court conditionally certified the
22 following class:

> All persons employed by [d]efendant in the State of California from May 2, 2009 through November 30, 2013, as a security technician however titled, including but not limited to the positions of Field Technician I, Field Technician II, Senior Field Technician, Field Service Technician I, Field Service Technician II, Senior Field Service Technician, Senior Technician Security Services and Security Service Technician.

(ECF No. 28 at 17.)

1    In addition, the court (1) appointed plaintiff Jerry D. Vanwagoner as class
2 representative; (2) appointed Simpluris, Inc. as claims administrator; (3) appointed Labor Law
3 Office as class counsel; and (4) approved the proposed notice to class members with a
4 modification. (*Id.* at 17–18.) The court granted plaintiff's motion with the following
5 reservations. First, the court asked the parties to provide "a more detailed explanation regarding
6 the minimum payout provision in section 6.1 of the settlement agreement." (*Id.* at 14.) More
7 specifically, the court asked the parties to provide "further explanation as to why reversion of
8 funds to defendant is proper as opposed to some other distribution benefiting the class, and why
9 60 percent is a reasonable minimum payout percentage under the circumstances of this case."
10 (*Id.*) Second, the court asked the parties to explain why the amount of $10,000 requested for the
11 claims administrator was reasonable in light of the small class size. (*Id.*) Third, the court asked
12 the parties to explain how the settlement amount related to the merits of the class members'
13 individual claims. (*Id.*) Fourth, the court, concerned about the potential for collusion, asked the
14 parties to provide a copy of plaintiff's individual agreement. (*Id.*) Fifth, the court asked the
15 parties to be prepared to explain how provisions 7.3 and 10.3 of the settlement agreement
16 complied with the fairness requirement. Those provisions contemplate "if certain class members
17 do not receive a notice packet because for instance, the notice packets are returned as
18 undeliverable, those members will not receive a payment, and yet they will release their claims."
19 (*Id.* at 15.)

20    In June 2014, plaintiff filed a motion for attorney's fees, costs, and service fee.
21 (ECF No. 30.) Two months later, plaintiff filed a motion for final approval of class action
22 settlement. (ECF No. 31.) Defendant filed a brief in support of plaintiff's motion for final
23 approval of class action settlement. (ECF No. 32.) Finally, with defendant's consent, plaintiff
24 lodged the following documents with the court for *in camera* review: (1) plaintiff's confidential
25 mediation statement; (2) defendant's confidential mediation statement; and (3) a confidential
26 settlement agreement between plaintiff and defendant for plaintiff's individual non-class claims.
27 (ECF No. 33.)
28 /////

II.     THE KEY TERMS OF THE SETTLEMENT AGREEMENT

Under the settlement agreement, defendant has agreed to pay up to $225,000. (ECF No. 24 ¶ 17.) The agreement the court preliminarily approved provided for the following payments:

> (1) Attorney's fees of not more than $56,250 to be paid to class counsel;
>
> (2) Litigation costs up to the amount of $8,000 to be paid to class counsel;
>
> (3) Settlement administration costs up to approximately $10,000 to be paid to the third party administrator;
>
> (4) Class representative fee of $5,000 to be paid to plaintiff in addition to plaintiff's entitlement as a class member;
>
> (5) Payment under California's Labor Code, Private Attorneys General Act of 2004 ("PAGA"), Cal. Lab. Code §§ 2698–2699, in the amount of $3,000. Of this amount, $2,250 (75 percent) to be paid to the Labor and Workforce Development Agency ("LWDA") and $750 to be paid to the class members;
>
> and
>
> (6) The remaining funds ("net settlement amount") in the amount "of approximately $145,000" to be available to the class members submitting claims. (ECF No. 23 at 9.)

In addition, under the agreement, defendant shall not pay out less than 60 percent of the net settlement amount. (ECF No. 25 ¶ 6.1.) If less than 60 percent is claimed, the difference is to be distributed proportionally to the participating class members based on the number of workweeks they worked during the class period. (*Id.*) Under these circumstances, the remaining 40 percent shall revert to defendant. (ECF 32 at 2–5.)

The parties now seek the court's approval of the following terms of the settlement agreement. They propose the maximum settlement amount, $225,000, be distributed as follows:

> 1. The net settlement amount available to be paid to the participating class members is $131,984.20;

4

   2. The amount to be paid to the class representative is $5,000;

   3. The amount to be paid for class counsel fees is $56,250;

   4. The amount to be paid for litigation expenses is $8,000;

   5. The LWDA payment is $2,250;

   6. The employer taxes are to be in the amount of $13,015.80;

   7. The amount to be paid to the claims administrator is $8,500.

(Salinas Decl. ¶ 12, ECF No. 31-3.) Because some of these numbers are miscalculated and because, at hearing, the parties stipulated to the court's providing the correct calculations, the court provides the corrected amounts below.

   After the claims administrator mailed the notice packets to the participating class members, as of July 23, 2014, it had received 23 claims of 51, a 45 percent return rate, covering a total of 3,872 workweeks, 47 percent of the available work weeks. (ECF No. 31 at 3; ECF No. 31-3 ¶ 13.) At hearing, the parties confirmed that no further opt-in packets were received after that date. The 23 claims represent $62,658.5905 of the available net settlement amount $133,316.15,[1] rather than $61,327.57, as represented by plaintiff (ECF No. 31-3 ¶ 13). Because, however, the settlement agreement has a 60 percent minimum payout provision, the amount to be distributed to the members increases to $79,989.69, or 60 percent of the net settlement amount of $133,316.15, rather than $78,290.52, as represented by plaintiff. (*Id.*)

III. CLASS CERTIFICATION

   A party seeking to certify a class must demonstrate it has met the requirements of Federal Rule of Civil Procedure 23(a) and at least one of the requirements of Rule 23(b). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979–80 (9th Cir. 2011). Although the parties in this case have stipulated that a class exists for purposes of settlement, the court must nevertheless undertake the Rule 23 inquiry

/////

---

[1] This amount is calculated by subtracting the costs identified by numbers 2 to 7 above from $225,000, but with $6,668.05 substituted for $8,000. (Carver Decl. ¶ 10, Ex. 2, ECF No. 30-1.)

5

independently. *West v. Circle K Stores, Inc.*, No. 04-0438, 2006 WL 1652598, at *2 (E.D. Cal. Jun. 13, 2006).

> Under Rule 23(a), before certifying a class, the court must be satisfied that:
>
> (1) the class is so numerous that joinder of all members is impracticable (the "numerosity" requirement);
>
> (2) there are questions of law or fact common to the class (the "commonality" requirement);
>
> (3) the claims or defenses of representative parties are typical of the claims or defenses of the class (the "typicality" requirement); and
>
> (4) the representative parties will fairly and adequately protect the interests of the class (the "adequacy of representation" inquiry).

*Collins v. Cargill Meat Solutions Corp.*, 274 F.R.D. 294, 300 (E.D. Cal. 2011) (quoting *In re Itel Secs. Litig.*, 89 F.R.D. 104, 112 (N.D. Cal. 1981)); *accord* Fed. R. Civ. P. 23(a).

The court must also determine whether the proposed class satisfies Rule 23(b)(3), on which plaintiffs rely in this action. To meet the requirements of that subdivision of the rule, the court must find that "'questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and effectively adjudicating the controversy.'" *Wal-Mart Stores, Inc. v. Dukes*, ___ U.S. ___, 131 S. Ct. 2541, 2558 (2011) (quoting Fed. R. Civ. P. 23(b)(3)). "The matters pertinent to these findings include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; [and] (B) the extent and nature of any litigation concerning the controversy already begun by or against class members . . . ." Fed. R. Civ. P. 23(b)(3)(A)–(B).

Here, as noted above, plaintiff filed a motion, which the court granted, for preliminary certification of the following class:

> All persons employed by [d]efendant in the State of California from May 2, 2009 through November 30, 2013, as a security technician however titled, including but not limited to the positions of Field Technician I, Field Technician II, Senior Field Technician, Field Service Technician I, Field Service Technician II, Senior Field Service Technician, Senior Technician Security Services and Security Service Technician.

(ECF No. 28 at 17.) There has been no objection to certification of the class, and there is nothing

before the court to suggest the preliminary certification was improper.  Hence, for the same reasons as set forth in the court's preliminary approval order (*id.* at 17–18), the court finds certification of the class appropriate for the purpose of final approval of the settlement agreement.

IV.     NOTICE TO AND RESPONSE FROM THE CLASS MEMBERS

As noted above, the number of potential class members in this action is 51.  (ECF No. 31 at 2.)  On June 3, 2014, the claims administrator mailed the class notices and the claim forms to the class members, informing them of the settlement terms, the method for filing a claim or opting out, and informing them how to file objections and appear at the final approval hearing.  (*Id.* at 2–3.)  In addition, the claims administrator established a toll-free telephone number, enabling the class members to inquire about the settlement.  (ECF No. 31-3 ¶ 4.)  That number was provided on the notice sent to the class members.  (*Id.*)  "The system is accessible 24 hours a day, 7 days a week, and will remain in operation throughout the settlement process.  Callers have the option to speak with a live call center representative during normal business hours or to leave a message and receive a return call during non-business hours."  (*Id.*)

The claims period closed on July 23, 2014.  (ECF No. 31 at 3.)  As of that date, the claims administrator received no returned notice packets.  (ECF No. 31-3 ¶ 9.)  The claims administrator received two "re-mail requests" for the notice packets, and promptly sent those to the requesting class members.  (*Id.* ¶ 10.)  There were no objections to the settlement and no requests to opt out of the settlement.  (*Id.* ¶¶ 15–16.)  At hearing, the parties confirmed that no further packets were returned as undeliverable and no opt-out forms or objections were received after July 23, 2014.

V.      THE SETTLEMENT AND FAIRNESS

A.      Legal Framework

When parties settle a class action, a court cannot simply accept the parties' resolution; rather it must also satisfy itself the proposed settlement is "fundamentally fair, adequate, and reasonable."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).  After the initial certification and notice to the class, a court conducts a fairness hearing before finally approving any proposed settlement.  *Narouz v. Charter Commc'ns, Inc.*, 591 F.3d 1261,

1267 (9th Cir. 2010); Fed. R. Civ. P. 23(e)(2) ("If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate."). A court must balance a number of factors in determining whether a proposed settlement is in fact fair, adequate and reasonable:

> [(1)] the strength of the plaintiffs' case; [(2)] the risk, expense, complexity, and likely duration of further litigation; [(3)] the risk of maintaining class action status throughout the trial; [(4)] the amount offered in settlement; [(5)] the extent of discovery completed and the stage of the proceedings; [(6)] the experience and views of counsel; [(7)] the presence of a governmental participant; and [(8)] the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d at 1026; *Adoma v. Univ. of Phx.*, 913 F. Supp. 2d 964, 974–75 (E.D. Cal. 2012). The list is not exhaustive, and the factors may be applied differently in different circumstances. *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982).

The court must consider the settlement as a whole, rather than its component parts, in evaluating fairness, and the settlement "must stand or fall in its entirety." *Hanlon*, 150 F.3d at 1026. Ultimately, the court must reach "a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625.

### B. The Strength of Plaintiff's Case

When assessing the strength of plaintiff's case, the court does not reach "any ultimate conclusions regarding the contested issues of fact and law that underlie the merits of [the] litigation." *In re Wash. Pub. Power Supply Sys. Secs. Litig.*, 720 F. Supp. 1379, 1388 (D. Ariz. 1989). The court cannot reach such a conclusion because evidence has not been fully presented and the "settlements were induced in large part by the very uncertainty as to what the outcome would be, had litigation continued." *Id.* Instead, the court is to "evaluate objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach these agreements." *Id.*

/////

Here, while plaintiff estimates if the case went to trial the class could recover in excess of $10 million, plaintiff acknowledges the risks associated with taking the case to trial and proving in the face of a vigorous defense that defendant did not comply with wage and hour laws. (ECF No. 31 at 4–5.) While plaintiff's maximum recovery appears exaggerated, defendant did challenge all of plaintiff's claims. (*See id.*) Specifically, defendant contended, among other things, there was no factual support for plaintiff's off-the-clock claims; it was not required to compensate the class members for commute time; it provided sufficient time for employees to take meal and rest periods; and it always reimbursed employees for their work related expenses. (*Id.* at 7.) In addition to challenging plaintiff's claims, defendant also argued plaintiff would be unable to certify the class because individual issues would predominate in determining whether wages were properly paid to the purported class members. (*Id.*)

Plaintiff took all of those issues and risks into account when negotiating with defendant and concluded the settlement amount is significant, "given the risks inherent in litigation and the defenses asserted." (*Id.* at 8.) The court agrees that in light of the uncertainties of litigating this case, an immediate benefit to the purported class members is in their interest. *See Officers for Justice*, 688 F.2d at 625 (noting that "voluntary conciliation and settlement are the preferred means of dispute resolution").

This factor favors approving the settlement.

C.  The Risk, Expense, Complexity and Likely Duration of Further Litigation; and The Risk of Maintaining Class Status

"Approval of settlement is 'preferable to lengthy and expensive litigation with uncertain results.'" *Morales v. Stevco, Inc*., No. 09-00704, 2011 WL 5511767, at *10 (E.D. Cal. Nov. 10, 2011) (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.* (*DIRECTV*), 221 F.R.D. 523, 526 (C.D. Cal. 2004)). The Ninth Circuit has explained "there is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)).

1          Here, the parties agree there are significant risks associated with litigating
2  plaintiff's claims. (ECF No. 31 at 5.) Plaintiff faces the difficulty of prevailing at summary
3  judgment, certifying the class, and then prevailing on a likely appeal. *See Rodriguez v. W. Publ'g*
4  *Corp.*, 563 F.3d 948, 966 (9th Cir. 2009). Those difficulties in turn would result in expenditure
5  of more time and resources. Given the high costs associated with litigating plaintiff's claims, and
6  the potential lengthy duration of litigation, the court finds this factor weighs in favor of approval.
7          In addition, the risk of decertification is another factor the court considers. *See id.*
8  ("A district court may decertify a class at any time."). While plaintiff is confident certification is
9  proper for the proposed class, as noted above, plaintiff also is cognizant of numerous arguments
10 defendant could raise to defeat class certification if the case were to proceed. (ECF No. 31 at 6.)
11 Accordingly, there remains a risk in obtaining and maintaining class certification in this case.
12         These factors weigh in favor of approving the settlement.
13     D.    The Amount Offered in Settlement
14         As noted above, the parties negotiated a $225,000 maximum settlement amount for
15 a potential class of 51, with a minimum payout provision of 60 percent. (ECF No. 24 ¶ 17.) All
16 associated expenses, such as class counsel fees and costs, class representative fee, claims
17 administrator fee, payroll taxes, and penalties under California law are to be paid out of the
18 maximum settlement amount. (ECF No. 31-3 ¶ 12.) The net settlement amount available to be
19 paid to the participating class members is $133,316.15. (*Id.*; Carver Decl. ¶ 10, Ex. 2, ECF
20 No. 30-1.) Based on the number of class members who submitted claim forms, 23 of 51, each
21 member will receive approximately $5,796.35. (ECF No. 31-3 ¶ 13.) The remaining 40 percent
22 of the net settlement amount, $53,326.46, will revert to defendant. (ECF No. 32 at 2–5.) While
23 the settlement amount represents a small fraction of the estimated maximum damages, "[i]t is
24 well-settled law that a cash settlement amounting to only a fraction of the potential recovery will
25 not per se render the settlement inadequate or unfair." *Officers for Justice*, 688 F.2d at 628. "[I]t
26 is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation
27 that induce consensual settlements. The proposed settlement is not to be judged against a
28 hypothetical or speculative measure of what might have been achieved by the negotiators." *Id.* at

625; *see also Collins*, 274 F.R.D. at 302 (a court must "'consider the plaintiffs' expected recovery balanced against the value of the settlement offer'" (citation omitted); *In re Cendant Corp., Derivative Action Litig.*, 232 F. Supp. 2d 327, 336 (D.N.J. 2002) (approving settlement representing less than 2 percent of the maximum possible recovery).

The parties claim the settlement amount was reached through compromise, tailored to compensate the employees based on the length of their respective employment periods. (*See* ECF No. 31 at 9; ECF No. 32 at 4.) The parties further agree the amount each member will receive is significant, and it is unlikely that individual class members would have recovered more without the class-action mechanism. (*See* ECF No. 31 at 8.) Accordingly, the settlement amount weighs in favor of approval in light of the uncertainties involved in litigating this case.

Furthermore, in the preliminary certification order, the court directed the parties to explain the reasonableness of the reversionary provision. (ECF No. 28 at 14.) In response, plaintiff states that the reversionary provision was agreed upon to avoid "a windfall" to the participating class members. (ECF No. 31 at 9.) Defendant avers that if the settlement was non-reversionary, it "would not have agreed to pay as much as it did." (ECF No. 32 at 3.) That is because "the settlement reached was based on the number of workweeks during the class period, and it would be an unfair windfall to those [23] individuals to receive twice the amount anticipated by the negotiated resolution, essentially receiving funds allocated for other individuals who [elected] not to participate." (*Id.* at 4.) The court finds that based on the number of participating members and based on defendant's unwillingness to settle otherwise, the reversionary provision is fair. *See Ching v. Siemens Indus., Inc.*, No. 11-04838, 2014 WL 2926210, at *5 (N.D. Cal. June 27, 2014) (approving a settlement agreement with a 50 percent reversionary provision in a case with similar underlying allegations).

On balance, the settlement amount weighs in favor of approval.

E.     The Extent of Discovery and the Stage of the Proceedings

"In the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed

/////

11

1   decision about settlement." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir.
2   1998) (quoting *In re Chicken Antitrust Litig.*, 669 F.2d 228, 241 (5th Cir. 1982)).
3           Plaintiff's counsel represents the parties had a clear view of the strengths and
4   weaknesses of their positions (ECF No. 31-2 ¶ 8), and there is no dispute that both counsel have
5   considerable experience in litigating wage and hour class actions. *See In re Pac. Enterprises Sec.*
6   *Litig.*, 47 F.3d 373, 378 (9th Cir. 1995) ("Parties represented by competent counsel are better
7   positioned than courts to produce a settlement that fairly reflects each party's expected outcome
8   in litigation."). Plaintiff requested "a significant production of documents, including
9   [d]efendant's relevant policies." (ECF No. 31-2 ¶ 8.) "Defendant also responded to written
10  discovery requests sufficient to confirm the value of the class-wide claims for settlement
11  purposes." (*Id.*) Accordingly, while the parties did not engage in extensive discovery, the court
12  finds they had sufficient information to make an informed decision, considering the litigation's
13  early stage.
14          This factor weighs slightly in favor of approving the settlement.
15      F.    The Experience and Views of Counsel
16          Class counsel have extensive experience in the area of wage-and-hour class
17  actions. (ECF No. 31 at 8.) Defendant is represented by experienced litigators as well. The
18  attorneys agree the terms of the settlement are fair and in the best interests of the settlement class.
19  Given the experience of counsel and their views, this factor favors approving the settlement. *See*
20  *Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 447 (E.D. Cal. 2013).
21      G.    The Reaction of the Class Members to the Proposed Settlement
22          "It is established that the absence of a large number of objections to a proposed
23  class action settlement raises a strong presumption that the terms of a proposed class settlement
24  action are favorable to the class members." *DIRECTV*, 221 F.R.D. at 529. As noted above, of the
25  51 notice packets mailed to potential class members, the claims administrator received 23 claim
26  forms, which equates to a 45 percent response rate. (ECF No. 31-3 ¶ 13.) During the final
27  approval hearing, the parties confirmed that no opt-out forms or objections to the proposed
28  settlement were filed or served on counsel. (*Id.* ¶¶ 15–16.) This factor weighs in favor of

approving the settlement. *DIRECTV, Inc.*, 221 F.R.D. at 529 ("The absence of a single objection to the [p]roposed [s]ettlement provides further support for final approval of the [p]roposed [s]ettlement.").

### H. The Possibility of Collusion

Where the parties negotiate a settlement agreement before final formal class certification, as in the instant case, the court must evaluate the settlement for evidence of collusion with a "higher level of scrutiny" than otherwise. *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). "Collusion may not always be evident on the face of a settlement, and courts therefore must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Id.* at 947. A few such signs may include: (1) a disproportionate distribution of the settlement to counsel; (2) a "clear sailing" provision, under which the defendant agrees not to oppose an attorney's fee award up to a certain amount; and (3) a reversionary provision, under which fees not distributed to class members revert to the defendant. *Id.*

Here, with respect to the first *Bluetooth* factor, the court finds the proposed distribution of the settlement to counsel is not disproportionate. Class counsel seeks $56,250, which equates to 25 percent of the maximum settlement amount of $225,000. As the court explains in further detail below, that amount is within the range acceptable by the Ninth Circuit. Thus, the first factor weighs in favor of finding no collusion. As to the second factor, while defendant agreed not to oppose class counsel's request for attorney's fees up to $56,250 (ECF No. 25 ¶ 6.2), the court finds that because those fees are to come from the settlement fund, that provision does not raise concern. *Cf. Rodriguez*, 563 F.3d at 961 (collusion generally inferred from a "clear sailing" provision where attorney's fees are paid on top of the settlement fund). Moreover, the agreement provides that if the court awards less than that amount, the remaining funds would become a part of the net settlement amount. Accordingly, the second factor weighs in favor of finding no collusion. As to the final factor, while the agreement contains a reversionary provision, as discussed above, the provision is not unreasonable. Moreover, the

settlement agreement is the product of arms-length mediation between experienced counsel, with an experienced mediator (ECF No. 25 ¶ 2.7). *Bluetooth*, 654 F.3d at 948 (presence of neutral mediator weighs in favor of finding of no collusion).

In sum, the *Bluetooth* factors weigh in favor of finding no collusion.

I. Conclusion

After considering the parties' submissions and oral argument at the final fairness hearing, and weighing all the relevant factors, the court finds final approval of the proposed class settlement appropriate. The Ninth Circuit has stated that a district court's determination regarding the fairness and adequacy of a proposed settlement is ultimately "an amalgam of delicate balancing, gross approximations and rough justice." *Officers for Justice*, 688 F.2d at 625 (internal quotation marks omitted). As noted, a district court must be mindful that "voluntary conciliation and settlement are the preferred means of dispute resolution." *Id.* Here, the court concludes the circumstances surrounding the settlement weigh in favor of finding the settlement fair and adequate; all of the preconditions to certification have remained satisfied since the court preliminarily certified the settlement class; and the parties have satisfactorily addressed the court's reservations raised in its preliminary certification order. The court GRANTS plaintiff's motion, certifies the settlement class and approves the settlement.

VI. <u>ATTORNEY'S FEES, COSTS AND INCENTIVE AWARD</u>

Class counsel seek an award of attorney's fees in the amount of $56,250, or 25 percent of the maximum settlement amount; litigation costs in the amount of $6,668.05 (ECF No. 30 at 7); and a class representative fee in the amount of $5,000 (*id.* at 1).

A. Request for Attorney's Fees

Rule 23 permits a court to award "reasonable attorney's fees . . . that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Even when the parties have agreed on an amount, the court must award only reasonable attorney's fees in a class action settlement. *Bluetooth*, 654 F.3d at 941. "Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method." *Id*. at 942. If the court employs the percentage-of-recovery

14

1    method, "calculation of the lodestar amount may be used as a cross-check to assess the
2    reasonableness of the percentage award." *Adoma*, 913 F. Supp. 2d at 981.  While exercising
3    discretion in choosing a calculation method, the court must employ the method that will produce
4    a reasonable result.  *Bluetooth*, 654 F.3d at 942.

5           In the Ninth Circuit, the benchmark for percentage of recovery awards is 25
6    percent of the total settlement award, which may be adjusted up or down.  *Hanlon*, 150 F.3d at
7    1029; *Ross v. U.S. Nat'l Bank Ass'n*, No. 07-02951, 2010 WL 3833922, at *2 (N.D. Cal. Sep. 29,
8    2010) (stating selection of benchmark must be based on all circumstances of the case).  Factors
9    that may justify departure from the benchmark include: (1) the result obtained; (2) the risk
10   involved in the litigation; (3) the contingent nature of the fee; (4) counsel's efforts, experience,
11   and skill; and (5) awards made in similar cases.  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043,
12   1048–50 (9th Cir. 2002).  "The 25% benchmark rate, although a starting point for analysis, may
13   be inappropriate in some cases. Selection of the benchmark or any other rate must be supported
14   by findings that take into account all of the circumstances of the case."  *Id.* at 1048.

15          Here, class counsel request an attorney's fee award equal to the benchmark award
16   for attorney's fees established by the Ninth Circuit.  Nothing before the court rebuts the
17   reasonableness of the request.  The court finds the fee request reasonable in light of the applicable
18   factors.  *See Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000).

19          The $5,796.35 average award per participating class member (ECF No. 32 at 4) is
20   a favorable result considering class counsel obtained a settlement early in litigation, avoiding
21   increased costs of litigation and significant uncertainties plaintiff would have faced in litigating
22   this case.  *See Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 492 (E.D. Cal. 2010) (result
23   favorable where 56 employees were to receive a recovery of $2,600 per employee); *see also*
24   *Ching*, 2014 WL 2926210, at *7 (noting "the overall result and benefit to the class from the
25   litigation is the most critical factor in granting a fee award").  In addition to the reasons discussed
26   above, the court notes class counsel undertook this case on a contingent fee basis (ECF No. 30 at
27   6); courts have long recognized the public policy of rewarding attorneys for accepting
28   representation on a contingent fee basis.  *See In re Washington Pub. Power Supply Sys. Sec.*

1  *Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994) ("It is an established practice in the private legal market
2  to reward attorneys for taking the risk of non-payment by paying them a premium over their
3  normal hourly rates for winning contingency cases.").

4  Moreover, class counsel Michael Carver has significant experience, 20 years, in
5  the wage and hour class actions arena. (ECF No. 30 at 4.) Michelle Lunde, who worked with
6  Mr. Carver, has eight years of experience "almost exclusively handling class actions." (*Id.*)
7  Class counsel began working on the case by investigating the relevant facts and researching the
8  claims to bring before filing the lawsuit. (*Id.* at 1.) After filing a fairly complex complaint, class
9  counsel participated in mediation and obtained the instant settlement "only after many hours of
10 negotiation." (*Id.* at 2.)

11 Comparison with the lodestar method also supports awarding the 25 percent
12 benchmark. As noted above, in cases where courts apply the percentage method to calculate
13 attorney's fees, courts are encouraged to use a calculation of the lodestar as a cross-check to
14 evaluate the reasonableness of the percentage award. *See Bluetooth*, 654 F.3d at 943. In
15 calculating an attorney's fees award under this method, a court must start by determining how
16 many hours were reasonably expended on the litigation, and then multiply those hours by the
17 prevailing local rate for an attorney of the skill required to perform the litigation. *Moreno v. City*
18 *of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). When a court uses the lodestar as a cross-
19 check to a percentage claim of fees, it need only make a "rough calculation." *Schiller v. David's*
20 *Bridal, Inc.*, No. 10-00616, 2012 WL 2117001, at *22 (E.D. Cal. Jun. 11, 2012).

21 Here, class counsel represent that their lodestar is $81,630, without calculating the
22 time spent on preparing the final approval motion and the time spent on appearing at the final
23 fairness hearing. (Carver Decl. ¶ 8, Ex. 2, ECF No. 30-1.) To reach that amount, class counsel
24 used the rate of $400 per hour for Mr. Carver (128.1 hours) and $300 per hour for Ms. Lunde
25 (101.3 hours). (*Id.*) The class counsel provide a list of cases where those hourly rates have been
26 found reasonable in comparison with the rates prevalent in the Eastern District of California. (*Id.*
27 ¶ 7.) The court accepts counsel's rates as reasonable.
28 /////

Having reviewed class counsel's billing records, the court finds them reasonable. Among other things, the case involved investigation; the filing of a fairly complex complaint; some pre-trial filings; and the subsequent settlement after a mediation session, which in turn required the filing of a motion for preliminary approval. Finally, the absence of objections from the class further demonstrates the reasonableness and fairness of the attorney's fee request. *See In re Heritage Bond Litig.*, No. 02-1475, 2005 WL 1594389, at *17–18 (C.D. Cal. Jun. 10, 2005).

The court GRANTS plaintiff's request for attorney's fees in the amount of $56,250.

B. Request for Costs

The court also must determine an appropriate award of costs and expenses. Fed. R. Civ. P. 23(h). "[I]n evaluating the reasonableness of costs, 'the judge has to step in and play surrogate client.'" *In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 469 (quoting *In re Cont'l Ill. Secs. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992)). "In keeping with this role, the court must examine prevailing rates and practices in the legal marketplace to assess the reasonableness of the costs sought." *Id.* (citing *Missouri v. Jenkins*, 491 U.S. 274, 286–87 (1989)).

Here, the class counsel states the total amount of costs is $6,668.05. (ECF No. 30 at 7.) The expenses include, among other things, costs for copying, filing, postage, parking, and service of process. (ECF No. 30-1, Ex. 4.) The largest expense is the mediation fee in the amount of $5,500. Courts routinely approve reimbursement of such costs. *See, e.g.*, *FACTA*, 295 F.R.D. at 469 ("Expenses such as reimbursement for travel, meals, lodging, photocopying, long-distance telephone calls, computer legal research, postage, courier service, mediation, exhibits, documents scanning, and visual equipment are typically recoverable." (internal quotation marks omitted)); *see also Pierce v. Rosetta Stone, Ltd.*, No. 11-01283, 2013 WL 5402120, at *6 (N.D. Cal. Sept. 26, 2013) (reimbursing mediation fees). After reviewing the expenses class counsel seek, the court finds them reasonable.

Accordingly, the court GRANTS plaintiff's request for reimbursement of costs in the amount of $6,668.05.

### C. Incentive Award

A district court has discretion to grant an incentive award to a named plaintiff to compensate for risks taken and work done on behalf of the class. *See Staton v. Boeing Co.*, 327 F.3d 938, 976–78 (9th Cir. 2003). Such awards are fairly typical in class action cases. *Rodriguez*, 563 F.3d at 958. In determining whether to approve an incentive award, courts may consider the following factors:

> (1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation[;] and[] (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

*Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).

Here, with respect to the first factor, the risk in commencing the suit, plaintiff states that by initiating the instant case he shouldered some degree of personal risk, such as financial liability and reduced future employment prospects in plaintiff's field of work. (Vanwagoner Decl. ¶¶ 7–8, Ex. 1, ECF No. 30-1.) Those risks are relevant factors in evaluating an incentive award request. *See Staton*, 327 F.3d at 977. Hence, the first factor weighs in favor of granting an incentive award to plaintiff.

With respect to the second factor, the notoriety and difficulties encountered, plaintiff avers he is "fearful that a stigma from suing [d]efendant was placed upon [him] in the community." (ECF No. 30-1, Ex. 1 ¶ 8.) There is nothing in the record to substantiate this fear. Nor is there any particular notoriety associated with the instant litigation. Hence, this factor is at least neutral.

With respect to the third factor, the amount of time and effort spent, plaintiff states he met and spoke with his attorneys "many times, going over the details of [the] case and [his] knowledge of the practices of [d]efendant." (*Id.* ¶ 7.) Plaintiff attended the mediation session and estimates he has spent "over 40 hours in direct work related to this case . . . ." (*Id.*) Because plaintiff expended reasonable efforts and was involved in the mediation, this factor weighs in favor of granting an incentive award to plaintiff. *See FACTA*, 295 F.R.D. at 471.

With respect to the fourth factor, the duration of the litigation, this case has not been protracted: the case was initiated in May 2013 (ECF No. 2 at 2) and settled as a result of a mediation session held in November 2013 (ECF No. 20).  Given the length of the litigation, the court finds the fourth factor neutral.  *Cf. Van Vranken*, 901 F. Supp. at 299 (where the class representative's "participation lasted through many years of litigation[,]" an incentive award was appropriate).

Finally, with respect to the fifth factor, the personal benefit enjoyed by plaintiff, while plaintiff has settled his individual claims with defendant, that settlement amount is not a part of the net settlement fund for the class members.  Under the class settlement agreement, plaintiff will not gain any benefit beyond that he would gain as one of the class members.  *See FACTA*, 295 F.R.D. at 472 ("An incentive award may be appropriate when a class representative will not gain any benefit beyond that he would receive as an ordinary class member.").  This factor weighs in favor of granting an incentive award to plaintiff.

In sum, after considering the relevant factors, the court finds that an incentive award of $5,000 for plaintiff is justified under the circumstances.  *See, e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (approving a $5,000 incentive award); *Ching*, 2014 WL 2926210, at *9 (approving a $5,000 incentive award, noting that in Northern District, "a $5,000 incentive award is presumptively reasonable"); *see also FACTA*, 295 F.R.D. at 470 ($5,000 incentive award); *Aguayo v. Oldenkamp Trucking*, No. 04-6279, 2006 WL 3020943, at *10 (E.D. Cal. Oct. 17, 2006) (preliminarily approving $5,000 incentive award).

## VII.   CLAIMS ADMINISTRATOR FEE

Plaintiff also requests that the court approve administration costs in the amount of $8,500 to be paid to the third-party claims administrator, broken down as follows:

> (a) case setup and data analysis ($800.00); (b) printing and mailing the [n]otice [p]acket[s] ($591.95); (c) [c]all [c]enter support ($300.00); (d) [c]laims [a]dministration ($1,910.59); (e) calculating individual settlement payments, distributing funds, and tax-reporting following final approval ($4,506.89); (f) final reporting to [c]ounsel ($960.00). From the total cost of $9,069.43, Simpluris deducted $569.43 to bring the final cost at $8,500.00.

(ECF No. 31-3 ¶ 17.)

This request is reasonable in light of the claims administrator's responsibilities before and after the final approval hearing. *See Ching*, 2014 WL 2926210, at *2 (approving an estimated $15,000 claims administrator fee for 68 claims); *Ozga v. U.S. Remodelers, Inc.*, No. 09-05112, 2010 WL 3186971, at *2 (N.D. Cal. Aug. 9, 2010) (granting $10,000 to the claims administrator for 156 claims); *Stuart v. Radioshack Corp.*, No. 07-4499, 2010 WL 3155645, at *7 (N.D. Cal. Aug. 9, 2010) (granting reasonable costs for, among other things, mailing the notice, receiving claims, and resolving disputed claims). Accordingly, the court approves the claims administrator fee in the amount of $8,500.

VIII. <u>CONCLUSION</u>

For the foregoing reasons, the court orders as follows:

1. The court GRANTS final approval of the settlement.
2. The court AWARDS the class counsel attorney's fees in the amount of $56,250.
3. The court AWARDS the class counsel reimbursement of expenses in the amount of $6,668.05.
4. The court AWARDS an incentive payment of $5,000 to the class representative, Jerry D. Vanwagoner.
5. The parties and the settlement administrator shall perform their respective obligations under the terms of the settlement agreement.
6. In accordance with the parties' stipulation at hearing, the case is dismissed with prejudice.

IT IS SO ORDERED.

DATED: December 16, 2014.

_____
UNITED STATES DISTRICT JUDGE